IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VAN C. JACKSON,

                       Plaintiff,

  v.                                                  OPINION and ORDER

JEFFERSON CTY. JAIL, JEFFERSON CTY. JAIL
DEPUTIES, DEP. DUCHER, DEP. SHULTZS, DEP.        23-cv-214-jdp
WAGNER, SERG. BROST, and LUET. GRAY,

                       Defendants.

---

Pro se plaintiff Van C. Jackson alleges that he expected to participate in the Huber program after he pleaded guilty in state court but that prison officials wouldn't allow him to participate because he is indigent. The "Huber law," Wis. Stat. § 303.08, "governs work release privileges for Wisconsin county jail inmates." *Domka v. Portage Cty.*, Wis., 523 F.3d 776, 778 (7th Cir. 2008). Huber prisoners may be housed in minimum security dormitories and permitted to work at regular outside employment during daytime hours. *See Kish v. Milwaukee Cty.*, 441 F.2d 901, 903 n.10 (7th Cir. 1971).

Because Jackson is proceeding in forma pauperis, I must screen his complaint under 28 U.S.C. § 1915(e)(2)(B). I must dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Jackson's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss Jackson's complaint for failure to state a claim but I will allow him to file an amended complaint to fix the problems identified in this order.

ALLEGATIONS OF FACT

After being sentenced, Jackson turned himself in to the Jefferson County Jail believing that he was going to be allowed into the Huber program. Jackson was told that he had to pay $288, have a job, and pass a urine test to do this. Jefferson passed the urine test, but a deputy told him that he had to pay daily fees totaling more than $500 to go to Huber, which Jackson owed because the jail was charging him more than $9 a day for his incarceration. Defendants Ducher and Shultzs told Jackson that he had to pay his Huber fees and daily fees before he could be transferred to the Dane County Jail. Defendant Brost told Jackson that he would waive the Huber fees but not the daily fees. The deputies gave Jackson "misinformation" because they did not want him to move to the Dane County Jail.

Jackson's allegations about the possible transfer to Dane County are hard to follow. The Dane County Jail had only a "jail diversion bracelet program" after COVID-19, not a Huber program. Jackson asked defendant Wagner and other deputies why they would enforce a Huber procedure for him to be transferred to Dane County when the had a diversion program only. Deputies initially told Jackson that they had no indigency forms, but Wagner later gave Jackson an indigency form and "diversion program sheets" during COVID-19, but the deputies acted like they didn't know the process and misled Jackson.

Jackson filed a grievance alleging that he would have been in Huber months ago but for his poverty, which Brost denied. Gray did not respond to Jackson's grievance, but sent him a letter stating that she read a state statute regarding prisoner reimbursement to a county. Gray did not respond to Jackson's further correspondence contending that the county was taking money "off [his] books" without his authorization.

In state court, Jackson filed a motion to modify his judgment of conviction as "far as getting fees waived." The court ordered the district attorney to respond, which is unfair because the court denied Jackson's "motion for good time" promptly and he will be released from jail in June 2023. Court and jail officials have a "personal vendetta" against Jackson and have conspired to violate his rights because all his pro se motions were denied, and "for many reasons [that he] can show and prove later." The jail's legal assistance program is inadequate. Jackson seeks damages and to be transferred to the Dane County Jail.

ANALYSIS

Jackson does not expressly state a legal basis for his claims. Reading the complaint generously, I will consider potential procedural due process, equal protection, right-of-access, and conspiracy claims.

A. Procedural due process

To state a procedural due process claim, Jackson must allege that "a state actor deprived him of a constitutionally protected liberty or property interest without due process of law." *See Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015); *see also Nash v. Litscher*, 50 F. App'x 317, 320 (7th Cir. 2002). A liberty interest may be created by state law or by the Due Process Clause itself. *Caldwell v. Miller*, 790 F.2d 589, 602 (7th Cir. 1986). But the "failure to follow state statutes or state-mandated procedures [usually] does not amount to a federal due process claim of constitutional magnitude." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 629 (7th Cir. 2016). A failure to follow the Huber law does not rise to the level of a constitutional violation. *See Domka*, 523 F.3d at 784. Changes in conditions of confinement that have "a substantial adverse impact on the prisoner" may create liberty interests if the conditions are outside the

3

sentence imposed on him. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980); *Olynick v. Taylor Cty.*, 643 F. Supp. 1100, 1103 (W.D. Wis. 1986).

Jackson alleges that defendants interfered with his ability to enter the Huber program and jail diversion bracelet program by misleading him about the programs' requirements, which stopped him from being transferred to Dane County Jail. But without more, defendants' failure to follow these state laws and procedures does not create a protected liberty interest in participating in these programs. Reading the complaint broadly, Jackson also appears to allege that his ability to participate in the Huber program was a condition of his plea agreement and judgment of conviction. But Jackson does not describe the conditions of his plea agreement or judgment of conviction or otherwise explain his belief that those documents guaranteed his ability to participate in the Huber program. Nor has Jackson alleged that participation in the jail diversion bracelet program was a condition of his plea agreement or judgment of conviction. Jackson's allegations are too conclusory to suggest that his conditions of confinement were outside the sentence imposed on him or so severe as to violate the Constitution. I will not allow Jackson to proceed on a procedural due process claim based on defendants' failure to allow him to participate in the Huber program or jail diversion bracelet diversion program.

Another potential claim involves funds in Jackson's jail accounts. Jackson alleges that Gray: (1) sent him a letter stating that she read a state statute regarding prisoner reimbursement to a county; and (2) did not respond to his further correspondence contending that the county was taking money "off [his] books" without his authorization. Presumably, Jackson means that money was being taken out of his trust account, but Jackson has not identified the individual responsible for this alleged deprivation. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under § 1983 . . . requires personal

involvement in the alleged constitutional deprivation." (alteration adopted)). The bare assertion that Gray sent Jackson a letter regarding prisoner reimbursement does not suggest that she was responsible for this alleged deprivation. If the taking of funds was pursuant to a county policy, Jackson hasn't explained what that policy is or why it would be unconstitutional. And if it were not according to a policy, a prison official's random and unauthorized deprivation of a prisoner's property does not violate due process if "adequate state post-deprivation remedies are available," *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), and Wisconsin allows tort claims against prison officials for the deprivation of property, *see Streckenbach v. Vandensen*, 868 F.3d 594, 597 (7th Cir. 2017). Jackson's allegations are too conclusory and unclear to state a claim for the unconstitutional taking of funds from his jail accounts.

## B. Equal protection

Jackson alleges that he could not participate in the Huber program because his poverty kept him from paying fees. Jackson's allegations do not suggest that the imposition of fees implicates a fundamental right (such as the practice of a religion), *see St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1009 (7th Cir. 2019), and Jackson does not allege that he is member of a suspect class (such as one based on race or national origin) and that defendants treated him differently than similarly situated prisoners outside that class, *see Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Prisoners and indigent persons are not suspect classes for equal protection purposes. *See Pennington v. Golonka*, 439 F. App'x 553, 555 (7th Cir. 2011); *Johnson v. Daley*, 339 F.3d 582, 585–86 (7th Cir. 2003); *United States v. Hirschberg*, 988 F.2d 1509, 1515 (7th Cir. 1993). So rational basis review applies to Jackson's equal protection claim. *Antida*, 919 F.3d at 1008; *Smith v. City of Chicago*, 457 F.3d 643, 650 (7th Cir. 2006).

To state an equal protection claim under the rational basis standard, Jackson must allege that: (1) defendants intentionally treated him differently from similarly situated prisoners because of his poverty; and (2) the difference in treatment lacked a rational relationship to a legitimate state interest. *See Smith*, 457 F.3d at 650–51. I will assume for screening purposes that Jackson has alleged the first prong.

Under the second prong, "[t]he rational-basis test is a lenient standard; the government's action simply cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and *some* legitimate governmental purpose." *See id.* at 652 (emphasis in original). "The government need not have articulated a reason for the challenged action at the time the decision was made." *Id.* Rather, Jackson must provide allegations "sufficient to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *See id.*; *see also id.* at 651 ("[T]he rational-basis test . . . may be based on rational speculation unsupported by evidence or empirical data.").

Jackson's allegations do not suggest that conditioning his participation in the Huber program on his payment of his daily fees was irrational. "[I]mposing a per diem charge on convicted offenders clearly relates to a permissive legislative objective of reimbursing public bodies for the costs expended in incarcerating these persons," *see Ilkanic v. City of Fort Lauderdale*, 705 So. 2d 1371, 1372–73 (Fla. 1998), and conditioning participation in the Huber program on the payment of daily fees promotes this objective, *cf. Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Jackson also alleges that he was assessed Huber fees but states that Brost eventually agreed to waive them. Jackson's allegations do not suggest that his exclusion from the Huber program based on his inability to pay his daily fees lacked a rational

6

relationship to a legitimate governmental purpose. I will not allow Jackson to proceed on an equal protection claim.

## C. Right of access to the courts

Jackson alleges that the jail lacks a law library, legal books, legal advisors, a working computer, and a working kiosk, which he contends makes it hard to do legal work. He adds that he his being charged for "legal paperwork" although he is indigent.

Prisoners have a right to access the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). To state a right-of-access claim, Jackson must allege that defendants hindered his efforts to pursue a nonfrivolous legal claim and that he suffered some actual concrete injury, "such as the inability to meet a filing deadline or to present a claim." *See id.* at 348; *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). The impeded claim "must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *see In re Maxy*, 674 F.3d 658, 661 (7th Cir. 2012).

Jackson has not identified the prison officials that have allegedly violated his right of access, which would be a requirement of a properly pleaded right-of-access claim. *See Colbert*, 851 F.3d at 657. And Jackson has not described any claim or alleged that the jail's legal program impeded him from pursuing it. I will not allow Jackson to proceed on a right-of-access claim.

## D. Conspiracy

I will not allow Jackson to proceed on a conspiracy claim under 42 U.S.C. § 1983 because I have dismissed his federal claims. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) ("Without a viable federal constitutional claim, the conspiracy claim under § 1983 necessarily fails; there is no independent cause of action for § 1983 conspiracy."). In any case, Jackson's allegations of conspiracy are wholly speculative and conclusory, so they fail to state

a § 1983 conspiracy claim. *See Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992) ("A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

E.  **Judicial and sovereign immunity**

I will not allow Jackson to proceed on any damages claim based on the state trial court's failure to promptly rule on his Huber-related motion because judicial immunity would bar this claim. *See Dawson v. Newman*, 419 F.3d 656, 660–61 (7th Cir. 2005). I have no authority to order the trial court to rule on that motion faster. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

F.  **Removal of defendants**

I will not allow Jackson to proceed against the Jefferson County Jail because it is not a suable legal entity under § 1983. *Morrison v. Brown Cty. Jail*, No. 21-cv-1436-pp, 2022 WL 1203042, at *2 (E.D. Wis. Apr. 22, 2022). I will not allow Jackson to proceed against "Jefferson County Jail Deputies" because that would be redundant; he has already named the specific deputies in the complaint's caption. Jackson may add more defendants in his amended complaint if there is a factual basis to do so and he otherwise complies with this order.

CONCLUSION

I will allow Jackson to file an amended complaint that fixes the above problems. In drafting his amended complaint, Jackson should remember to do the following:

8

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of federal law. Jackson must take care to allege what each defendant did, or failed to do, to violate his federal rights.

- Jackson should avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Jackson believes supports a claim, he should identify each defendant who took that action.

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.

- Omit legal arguments other than explaining what types of claims he wishes to assert.

                                     ORDER

IT IS ORDERED that:

1. Plaintiff Van C. Jackson's complaint, Dkt. 1, is DISMISSED for failure to state a claim upon which relief may be granted.

2. Plaintiff may have until May 31, 2023, to submit an amended complaint that fixes the above problems.

3. Plaintiff must file his amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages. Any text on the form or a supplemental page must be large enough and have enough spacing between lines and in the margins for the court to read it easily. The supplemental pages that Jackson submitted with his complaint lacked adequate spacing between the lines and in the margins.

4. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

5. If plaintiff fails to comply with this order, I may dismiss this case.

6. Jefferson County Jail and Jefferson County Jail Deputies are to be removed as defendants.

7. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

8. Plaintiff must inform the court of any new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed for failure to prosecute.

9. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

10. The clerk of court is directed to send plaintiff copies of this order and the court's prisoner complaint form.

Entered May 1, 2023.

                        BY THE COURT:

                        /s/

                        _____

                        JAMES D. PETERSON
                        District Judge